UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OXFORD BIOMEDICAL RESEARCH, INC.,
a Michigan Corporation,

    Plaintiff,                                  Case No. 05-60274

v.                                                 Hon. John Corbett O'Meara

INVITROGEN CORPORATION,
    Defendant.
_____/

## OPINION AND ORDER DENY CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Before the court are cross motions for partial summary judgment. Both motions were filed on April 30, 2008. The matters are fully briefed, and the court heard oral argument on June 19, 2008. For the reasons set forth below, the court DENIES both motions.

## FACTUAL BACKGROUND

Oxford is a closely-held Michigan biotechnology firm that manufactures biological reagents and assay kits that researchers use to discover new treatments and medications. As part of its work, Oxford secured a license agreement that allowed it to use a recombinant DNA developed at Vanderbilt University (Vanderbilt DNA). Apparently, the Vanderbilt DNA is highly regarded in the industry, so much so, that in 1995 PanVera Corporation[1] entered into a licensing and supply agreement (the Contract) with Oxford which gave PanVera access to the Vanderbilt DNA and allowed PanVera to manufacture recombinant proteins from the Vanderbilt DNA.[2]

---

[1] PanVera Corporation specialized in purifying and commercializing recombinant proteins.

[2] Recombinant proteins are proteins derived from genetically engineered DNA.

Under the Contract, Oxford received the following: (1) the right to purchase PanVera's products at 45% bulk or 40% dispensed discount from the published price list (PanVera also received the right to purchase Oxford products at these discount prices); (2) the right to receive up to 5mg free of charge of a "reasonable number" of recombinant proteins manufactured by PanVera; and, (3) PanVera would pay an annual royalty fee to Oxford.

Defendant Invitrogen purchased PanVera's assets in 2003, including the Contract and PanVera's obligations under the Contract. Herein lies the crux of the dispute. Plaintiff Oxford complains that neither PanVera, nor Invitrogen provided it with discounts to their products or with 5mg of a reasonable number of proteins. In other words, Oxford wants discounts on all of Invitrogen's products, and not just those stemming from PanVera, and what it believes to be a "reasonable number" of proteins. Defendant Invitrogen argues that Plaintiff's view of the scope of the products it is entitled to is overbroad and unsupported by the language of the contract. According to Invitrogen, the contract only allowed Oxford a discount on PanVera products.

## LAW AND ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### II. MOTIONS FOR PARTIAL SUMMARY JUDGMENT

The disputes in this matter center on two separate provisions. The first concerns

discounts originally promised to Oxford by PanVera. Oxford argues that Invitrogen stands in the place of PanVera, and must open up all its products, some 30,000 of them, to the discount provisions of the Contract PanVera had with Oxford. Invitrogen disagrees, arguing that it is only obligated to discount PanVera's products, and not its own. The second concerns a disagreement over what PanVera's obligation was concerning a requirement that it provide Oxford with 5 milligrams of a reasonable number of proteins. Both parties ask for partial summary judgment.

The relevant contractual language comes from paragraph 3.1 of the Contract:

> OBR [Oxford Biomedical Research, Inc.] and PanVera shall bave the ability to purchase products from the inventory of the other company that were manufactured by said company at a price equal to a 45% (bulk) or 40% (dispensed) discount from the published list price, except that for the sale of LICENSED PRODUCTS from PanVera to OBR the discounts in effect will be 40% (bulk) or 35% (dispensed). All of the products would be for resale. (Contract, ¶ 3.1(c)).

> PanVera will provide [Oxford] up to five (5) mgs free of charge of a reasonable number of recombinant proteins manufactured by PanVera and placed into inventory for sale to customers by PanVera. The five mg amount may be reduced if PanVera has difficulty in expressing reasonable amounts of protein. This protein shall only be used by OBR for the immediate internal production of antibodies, and shall not be transferred or sold to any third party. (Contract, ¶ 3.1(b)).

The questions that must be answered are these: Does Invitrogen take the place of PanVera, making all its products susceptible to the price discount? Or, put another way, is Oxford merely entitled to a discount on products made by PanVera which is now a subgroup of Invitrogen? Second, what constitutes a "reasonable amount" of proteins. Based on the information presented to this court, that is a decision that should be made by a finder of fact.

In regards to both questions, the law is scant and general, and as is generally true of contract cases, the truth is ascertained through the evidence, specifically the interaction of the parties with each other. In this instance, the parties rely heavily on email exchanges that they suggest support their motions for partial summary judgment. That is hardly the case as the emails only serve to illustrate the need for a fact finder to intervene and give its estimate of who is closest to the intent of the contract and if the actions of the parties made subsequent changes to the contract. What is certain is that issues of material fact exist and summary judgment is inappropriate at this stage of the proceedings.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's and Plaintiff's motions for partial summary judgment, both filed on April 30, 2008, are DENIED.

**SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: July 15, 2008


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 15, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager